UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CARLTON VIRGIL BURKS,

        Petitioner,                      Case Number 08-12825-BC
                                                                       Honorable Thomas L. Ludington

v.

CAROL R. HOWES,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

On July 2, 2008, Petitioner Carlton Virgil Burks, a Michigan prisoner, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for two counts of first-degree retail fraud. Petitioner was convicted by a jury in Oakland County Circuit Court, and on September 26, 2006, he was sentenced as a fourth habitual offender to concurrent terms of 30 months to 20 years of imprisonment for each of the convictions.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

    I.      Mr. Burks' due process rights were violated by the destruction of key store surveillance videos in this retail fraud case.

    II.     Mr. Burks was denied his constitutional right to a speedy trial where he was brought to trial more than eighteen months after his arrest.

    III.    Mr. Burks was denied the effective assistance of his attorney where his attorney advised him that he could not be impeached by his previous convictions, but, in fact, he could, and the prosecution did impeach him with previous retail fraud convictions in a trial for retail fraud.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Burks*, No. 273647, 2008 WL 400688 (Mich. Ct. App. Feb. 14, 2008). Petitioner filed an application for leave to appeal the same claims to the Michigan Supreme Court, which was denied. *People v. Burks*, 748 N.W.2d 850 (table) (Mich. May 27, 2008).

In the habeas petition pending before this Court, Petitioner raises the single claim that "due process rights were violated by the destruction of key store surveillance videos by way of bad faith on the part of Detective Ron Bodek and Troy Police." For the reasons set forth below, the petition will be denied.

I

Petitioner's convictions arise from thefts at Target and Wal-Mart stores located in Troy, Michigan, on December 28, 2004. Paul Laczynski testified that he is a store manager for a Home Depot in Troy, Michigan. On December 28, 2008, a man he identified as Petitioner exhibited suspicious behavior in the Home Depot. Petitioner was seen attempting to bypass the check-out lanes with three items totaling approximately $60 in his shopping cart. When questioned by a cashier, Petitioner stated that he was returning the items, but needed to go to his car for the receipt. Petitioner left the merchandise in the store, got into a car with a female companion, and drove toward a Farmer Jack store located in the same shopping complex. Home Depot manager Laczynski wrote down Petitioner's vehicle's license plate number.

When Home Depot manager Laczynski went to Farmer Jack for a cup of coffee, he noticed Petitioner's vehicle in the parking lot. Shortly thereafter, he noticed Petitioner and his female companion jogging to their vehicle from the direction of Target with a shopping cart full of merchandise. Petitioner and his companion threw the merchandise into their vehicle. Mr. Laczynski

followed the vehicle as it was driven to a Wal-Mart parking lot. After seeing Petitioner enter Wal-Mart, he contacted the Troy Police Department.

Troy Police Officer Andrew Satterfield testified that he responded to the call at Wal-Mart. Officer Satterfield, in plainclothes and an unmarked vehicle, established surveillance around the vehicle. Mr. Laczynski identified Petitioner as he exited Wal-Mart. Officer Satterfield observed Petitioner putting merchandise into his car. He then placed a blue police light on his dashboard, exited his vehicle and approached Petitioner. Officer Satterfield was wearing a neck badge and identified himself as a police officer. Petitioner fled.

Police Officer Brian La Forest testified that he followed Petitioner in his patrol car and placed him into custody. He testified that the merchandise found in Petitioner's car was inventoried and returned to the stores. No receipts related to the items were found in Petitioner's car.

Heather Galletly testified that she was the assistant manager at Wal-Mart at the time of the theft. She was asked by police to review merchandise in a vehicle in the parking lot. She identified items in the vehicle, including a stereo, two telephones, two cellular telephones, and a shaving trimmer, as having come from the Wal-Mart store. She was able to identify the items because of the pricing stickers, store number, and shipping labels on the items. Ms. Galletly further testified that she scanned the merchandise to confirm that the items were Wal-Mart merchandise. She then checked the computer system and determined that there was no record that any of the items had been sold during the relevant time period.

Ms. Galletly testified that she reviewed the store surveillance videotape, which showed Petitioner enter the store, get a shopping cart, and later leave the store with a cart full of merchandise. She testified that the videotape showed Petitioner walking through the aisle of

registers that were closed and did not show him making any purchases, although she acknowledged that not every register was captured by the security cameras. The store surveillance videotape was admitted into evidence.

David Miller testified that he was a security manager for the Target store at the relevant time. After receiving a description of someone who might be leaving the store with unpaid merchandise, Mr. Miller reviewed surveillance video footage. He found an individual matching the description of the suspect and identified that person as Petitioner. He observed Petitioner enter the store, select a shopping cart, and place numerous items from the electronics department into his shopping cart. Mr. Miller was then contacted by the Troy Police Department and asked to view items in a vehicle in the Wal-Mart parking lot. Mr. Miller identified numerous items as Target merchandise. He took the items back to the Target store and confirmed they were Target merchandise. Mr. Miller was also able to determine that none of the items found in the vehicle had been sold during the relevant time period. The store surveillance videotape footage was admitted into evidence.

Petitioner testified in his own defense. He testified that he paid for all of the items found in his vehicle. He admitted that the person depicted on the Target and Wal-Mart surveillance videotape footage was him.

II

The following standard of review is applicable to this habeas case:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

Where a claim is fairly presented in state court, but the state court, although denying the claim, fails to address it, a federal court on habeas review must conduct an independent review of the state court's decision. *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 943. However, the independent review "is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.*

Petitioner alleges that certain portions of the surveillance videos from the Target and Wal-Mart stores were destroyed in bad faith by the police department, so that the jury saw only portions of the video surveillance footage taken on the day of the thefts. The Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984) (citation omitted). "Separate tests are applied to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible, *see Trombetta*, 467 U.S. at 489, versus cases where 'potentially useful' evidence is not accessible. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)." *United States v. Wright*, 260 F.3d 568, 570 (6th Cir. 2001).

A defendant's due process rights are violated where material exculpatory evidence is not preserved. *Trombetta*, 467 U.S. at 489. For evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488-89. The destruction of material exculpatory evidence violates due process regardless of whether the government acted in bad faith. *See id.* at 488; *Youngblood*, 488 U.S. at 57.

However, "the Due Process Clause requires a different result when . . . deal[ing] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 56. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of

law." *Id.* at 58. A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003).

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held that Petitioner's rights were not violated despite the fact that the evidence was not preserved. The state court applied the standard articulated in *Youngblood* and concluded that Petitioner did not demonstrate that the police acted in bad faith or that the evidence was exculpatory. The Court of Appeals reasoned:

> To succeed on this claim, defendant had the burden to show that the evidence was exculpatory or that the police acted in bad faith. Defendant has not shown that the allegedly missing video evidence would have been exculpatory. Indeed, defendant merely asserts that the evidence would have been helpful to his defense of the retail fraud charge *if* the tape showed defendant actually making a purchase.
>
> Absent a showing that the evidence would have been exculpatory, defendant must show bad faith on the part of the police. Defendant's motion expressly absolved the prosecution and police of any wrongdoing and stated that they worked "tirelessly" to try and obtain the video from Target and Wal-Mart. We see no basis for imputing any acts by Target or Wal-Mart employees to the police or the prosecution but, in any event, defendant has not shown that any Target or Wal-Mart employees acted in bad faith to destroy the videos. Moreover, even if video footage was intentionally destroyed, nothing in the record suggests that the purpose was to destroy evidence before trial. Accordingly, defendant's claim is without merit.

*Burks*, No. 273647, 2008 WL 400688, at *1.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner has not demonstrated that the videotape was exculpatory. In fact, based upon the testimony of Mr. Miller and Ms. Galletly, who reviewed the entire video surveillance footage from their respective stores, no exculpatory footage was present on the tapes. Petitioner has not demonstrated that the videotape was in control of the police or prosecutor or that

it was destroyed by the police or prosecutor. The record is devoid of evidence that the police or prosecution authorities acted in bad faith – a necessary requirement to establish a constitutional violation where the destroyed evidence was only potentially useful to the defense. Given such circumstances, Petitioner has not established a constitutional violation. Habeas relief is not warranted.

III

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that habeas relief is not warranted. Therefore, the Court will deny a certificate of appealability. Furthermore, Petitioner will be denied leave to proceed in forma pauperis on appeal as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [Dkt # 1] is **DENIED**.

It is further **ORDERED** that Petitioner is **DENIED** a certificate of appealability and leave to proceed in forma pauperis on appeal.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: July 13, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 13, 2010.

s/Tracy A. Jacobs  
TRACY A. JACOBS

---